IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MICHAEL GERSTMAN and MARIE WEBSTER, | § § § | |
| Plaintiffs, | § § | |
| VS. | § § | Civil Action No. 3:24-CV-0635-D |
| CRESTBROOK INSURANCE COMPANY, | § § § | |
| Defendant. | § § | |

MEMORANDUM OPINION
AND ORDER

In this removed action arising from a storm damage insurance coverage dispute, plaintiffs Michael Gerstman and Marie Webster, the insureds, sue defendant Crestbrook Insurance Company ("Crestbrook"), their insurer, to recover on contractual and extra-contractual theories arising from Crestbrook's denial of their claim. Plaintiffs assert claims for breach of contract; violations of Tex. Ins. Code Ann. §§ 541.060(a)(1), 541.060(a)(2)(A), 541.060(a)(3), 541.060(a)(4), and 541.060(a)(7) (West 2025); violations of the Texas Prompt Payment of Claims Act ("TPPCA"), Tex. Ins. Code Ann. §§ 542.055, 542.056, 542.058, and 542.060 (West 2025); breach of the duty of good faith and fair dealing; and violations of various provisions of the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"), Tex. Bus. & Com. Code Ann. §§ 17.46(b)(2), 17.46(b)(5), 17.46(b)(7), 17.46(b)(9), 17.46(b)(12), 17.46(b)(20), 17.46(b)(24), 17.50(a)(2), 17.50(a)(3), and 17.50(a)(4) (West 2025). Crestbrook moves for summary judgment and to strike the

testimony and opinions of plaintiffs' experts, Dr. Neil Hall ("Dr. Hall") and Kevin Funsch ("Funsch").  For the reasons that follow, the court denies Crestbrook's motions to strike the testimony and opinions of plaintiffs' experts and grants in part and denies in part Crestbrook's motion for summary judgment.

I

Plaintiffs' property in Dallas (the "Property") was insured under an insurance policy issued by Crestbrook (the "Policy").[1]  The relevant policy period was July 5, 2021 to July 5, 2022.  On May 30, 2022, during a hail and wind storm, a tree branch fell onto the Property, causing significant damage.  Plaintiffs made a claim to Crestbrook under the Policy.

On June 6, 2022 Crestbrook's claim associate, Jeremy S. Fenier ("Fenier"), inspected the Property to adjust the claim.  Fenier estimated damages totaling $6,061.68.  Because this sum was less than plaintiffs' $25,000 Policy deductible, Crestbrook did not make a payment to plaintiffs under the Policy.

Plaintiffs, in turn, hired a public adjuster, Benjamin Kueng ("Kueng"), to inspect the Property, which he did on August 3, 2022.   Kueng estimated repair costs totaling $137,545.19, including a full replacement of the roof.  Crestbrook then reinspected the Property at plaintiffs' request, and Fenier increased his damage estimate to a total sum of $10,093.45.  Because this amount was still within plaintiffs' deductible, Crestbrook again

---

[1]The court recounts the evidence in the light most favorable to plaintiffs as the summary judgment nonmovants and draws all reasonable inferences in their favor. *See, e.g.*, *Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citation omitted).

denied coverage under the Policy.[2]

Plaintiffs allege that Fenier misrepresented the actual amount of damage to the Property in order to keep the amount of covered damage below the Policy deductible. Crestbrook moves to strike two experts whom plaintiffs have designated, and for summary judgment. The court is deciding the motions on the briefs, without oral argument.

## II

The court turns first to Crestbrook's motions to strike plaintiffs' experts. "The court decides these motions in its role as gatekeeper under Fed. R. Evid. 702." *SEC v. Cuban*, 2013 WL 3809654, at *1 (N.D. Tex. July 23, 2013) (Fitzwater, C.J.) (citing *Nunn v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 2540754, at *2 (N.D. Tex. June 22, 2010) (Fitzwater, C.J.)). "The court may admit proffered expert testimony only if the proponent, who bears

_____

[2]Crestbrook disputes plaintiffs' chronology of events. Crestbrook maintains that the initial inspection of the Property took place on June 3, 2022, not June 6, and was conducted by Jacob Price of Ladder Now, not Fenier. Crestbrook also posits that Fenier's initial cost estimate was $4,561.68 for repairs to the roof, gutters, windows, and associated costs, and that, after receiving an invoice from Meyer's Pride Roofing, LLC ("Meyer's") for $1,500 related to the placement by Meyer's of a tarp over the damaged tiles on the roof, Fenier prepared a supplemental cost estimate of $6,061.68. Crestbrook contends that, on June 6, 2022, Fenier timely provided his initial estimate and a letter advising plaintiffs that the covered damage to the Property was below the Policy deductible and that the estimate contained 79 photographs of the Property. Crestbrook also maintains that, after receiving a $7,800 cost estimate from Meyer's for replacing the damaged tiles, it advised plaintiffs on September 16, 2022 that no payment would be made on the claim because, even with the increased cost, the damage still did not exceed the deductible. Crestbrook also contends that it retained Nederveld, Inc. to reinspect the Property and that that inspection took place on January 26, 2023, not on September 12, 2022, and that plaintiffs filed suit on February 5, 2024, before Fenier provided an updated coverage letter and his revised cost estimate totaling $10,093.45 on February 22, 2024.

-3-

the burden of proof, demonstrates that (1) the expert is qualified, (2) the evidence is relevant to the suit, and (3) the evidence is reliable." *Nunn*, 2010 WL 2540754, at *2 (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999)).

The first requirement is that the expert be qualified. "Before a district court may allow a witness to testify as an expert, it must be assured that the proffered witness is qualified to testify by virtue of his 'knowledge, skill, experience, training, or education.'" *United States v. Cooks*, 589 F.3d 173, 179 (5th Cir. 2009) (quoting Fed. R. Evid. 702). "A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Id.* (citing *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999)). "Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue. Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009) (citation omitted).

The second requirement is that the expert's testimony be relevant. To be relevant, "expert testimony [must] 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 245 (5th Cir. 2002) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993)). "Relevance depends upon 'whether [the expert's] reasoning or methodology properly can be applied to the facts in issue.'" *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007) (quoting *Daubert*, 509 U.S. at 593); *see also* Rule 702(d) (requiring that the expert has reliably applied the principles and methods to the facts of the case).

The third requirement is that the expert's testimony be reliable. "Reliability is determined by assessing 'whether the reasoning or methodology underlying the testimony is scientifically valid.'" *Knight*, 482 F.3d at 352 (quoting *Daubert*, 509 U.S. at 592-93); *see also* Rule 702(c) (requiring that "testimony [be] the product of reliable principles and methods"). Expert testimony "must constitute 'more than subjective belief or unsupported speculation.'" *Nunn*, 2010 WL 2540754, at *2 (quoting *Daubert*, 509 U.S. at 590). The court focuses on the expert's methodology, not the conclusions generated by it. *Id.* at *4 (citing *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 989 (5th Cir. 1997)). If, however, "there is simply too great an analytical gap between the [basis for the expert opinion] and the opinion proffered," the court may exclude the testimony as unreliable. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *see also Johnson v. Arkema, Inc.*, 685 F.3d 452, 460-61 (5th Cir. 2012); *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 278-79 (5th Cir. 1998). This review is usually conducted by considering the five nonexclusive *Daubert* factors. But these factors "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of [the] testimony." *Kumho*, 526 U.S. at 150.

The burden is on the proponent of the expert testimony to establish its admissibility by a preponderance of the evidence. *See Daubert*, 509 U.S. at 592 n.10; *see also Johnson*, 685 F.3d at 459. The court's inquiry is flexible in that "[t]he relevance and reliability of expert testimony turns upon its nature and the purpose for which its proponent offers it." *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010) (per curiam) (citation omitted).

"As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the [trier of fact's] consideration." *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596; *Nunn*, 2010 WL 2540754, at *5.

### III

Crestbrook moves to strike Dr. Hall's opinions on the basis that they are irrelevant, and it contends that his opinion regarding the full replacement of the roof should be excluded because it is unreliable and lacks a clear or verifiable methodology.

### A

Crestbrook first contends that Dr. Hall's opinions should be excluded as irrelevant because there is no dispute as to the scope of the damages at issue in this case. Plaintiffs counter that Dr. Hall's opinions on causation and damages will certainly help the trier of fact understand the cause and extent of the damages at issue in this case.

To be relevant, evidence must "assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 591 (quoting Rule 702). Because plaintiffs must prove that there was covered damage to the Property, Dr. Hall's opinions regarding the cause of the damage are certainly relevant: they will assist the jury to understand the evidence or to determine a fact in issue. Moreover, Dr. Hall's expert opinions suggest that there may be more damages at issue than Crestbrook is willing to acknowledge

when it maintains that it was only obligated to pay the cost of replacing the individual damaged tiles. The court therefore declines to strike Dr. Hall's opinions on this basis.

B

Crestbrook also contends that Dr. Hall's opinions regarding the necessity of replacing the entire roof in the absence of available matching tiles are unreliable and not based on any clear or verifiable methodology. Plaintiffs respond that Dr. Hall's experience as a consultant, engineer, architect, and Ph.D. with 50 years of relevant experience put him in a position to rely on his experience in coming to a conclusion about the cause of damage, and that his report includes the reliable weather data and inspection upon which he based his conclusions.

Although Crestbrook objects only to Dr. Hall's opinions regarding the full replacement of the roof as unreliable and lacking clear or verifiable methodology, plaintiffs seem to respond only that Dr. Hall's opinions regarding the cause of the damage are in fact reliable because they are based on reliable weather data. *See* P. Resp. (ECF No. 34) at 10-11. There is a bit of a mismatch between the parties' positions. Nevertheless, Dr. Hall's report and CV plainly show that his reliance on his experience makes his opinions on the repairs required to bring the Property back to pre-loss condition sufficiently reliable for purposes of Rule 702. The court will therefore address the reliability of Dr. Hall's opinions on the replacement of the roof as well.

Rule 702 does not prohibit an expert from reaching an opinion that is based on the expert's experience. *Kumho Tire*, 526 U.S. at 156 ("[N]o one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized

experience."); *Kozak v. Medtronic, Inc.*, 512 F.Supp.2d 913, 918 (S.D. Tex. 2007) ("An expert's testimony does not always have to be based on scientific testing; it can be based on personal experience."); *see also* Rule 702 advisory committee notes (2000 Amendments) ("Nothing in this amendment is intended to suggest that experience alone—or experience in conjunction with other knowledge, skill, training or education—may not provide a sufficient foundation for expert testimony.").

Dr. Hall's report clearly reflects that he "relied on the facts stated in [his] report, the documents listed [], and [his] education, training, and experience in the fields of architecture and engineering." P. Resp. Ex. E (ECF No. 32-5) at 3. The report notes that he relied on his own inspection of the Property as well as weather data, and his attached CV shows his extensive education and professional experience in engineering and architecture. The court is satisfied that plaintiffs have shown that the opinions at issue are reliable. *See, e.g.*, *Kim v. Nationwide Mut. Ins. Co.*, 614 F.Supp.3d 475, 488 (N.D. Tex. 2022) (Fitzwater, J.) ("[The expert] inspected the Property; observed the markings himself on the Property; was able to distinguish the hail from other potential sources of damages; and reviewed a weather report to determine whether a hail storm could have damaged the roof."); *Kahlig Auto Grp. v. Affiliated FM Ins. Co.*, 2021 WL 148056, at *4 (W.D. Tex. Jan. 15, 2021) (finding expert testimony reliable when the expert "reviewed an analysis of published weather data from the date of the storm; physically inspected the three dealerships; interviewed employees with personal knowledge of the storm and damage; [and] reviewed photographs of vehicles located at the three dealerships damaged by hail during the storm[.]"); *TBC-JP-LR, JV v.*

*Allied Prop. & Cas. Ins. Co.*, 2018 WL 10562785, at *4 (N.D. Tex. Sept. 28, 2018) (Means, J.) (finding an expert's opinions about the age and cause of storm damage reliable when based on a review of storm events, damage, and experience working in the area and noting that the expert "need not eliminate all possible causes of the damage at issue, however, for his opinion to be sufficiently reliable to be presented to the jury"). And to the extent that Crestbrook maintains that Dr. Hall did not make "any effort to determine whether 'matching' tiles were available," this fact, if true, would not undermine the reliability of his opinion that the entire roof would need to be replaced *if* matching tiles were unavailable in sufficient quantity.

C

For the reasons discussed, the court denies Crestbrook's motion to strike the opinions and testimony of Dr. Hall.

IV

Crestbrook also moves to strike the opinions and testimony of plaintiffs' expert Funsch.

A

Crestbrook contends that Funsch's estimate and opinions related to the full replacement of the roof are irrelevant because they will not assist the jury in determining whether Crestbrook underpaid the claim. It maintains that they are unreliable insofar as they rely on Dr. Hall's opinion that the roof may need to be completely replaced if there are not sufficient matching tiles with which to replace the damaged tiles. Plaintiffs maintain that

-9-

Funsch's estimate and opinions are reliable because they are based on Dr. Hall's recommendations, which are, in turn, based on reliable weather data and his decades of experience, and that the opinions are relevant insofar as they determine the cost of the repairs recommended by plaintiffs' causation expert.

B

The court disagrees with Crestbrook's assertion that Funsch's opinions and estimate are irrelevant because they will not assist the jury in determining whether Crestbrook underpaid the claim. This contention is based on Crestbrook's position that it is not required to replace the entire roof under the Policy and that the estimated cost of replacing the roof is not relevant. Because there remains a genuine issue of fact as to whether Crestbrook was required to pay the cost of replacing the entire roof in the absence of the availability of matching tiles, *see infra* at § VI(C), Funsch's estimate regarding the cost of replacing the roof is relevant. The court therefore declines to strike Funsch's estimate and opinions on this basis.

C

Crestbrook contends that Funsch's estimate and opinions related to the full replacement of the roof are unreliable insofar as they rely on Dr. Hall's opinion that the entire roof may need to be replaced if there are insufficient matching tiles to replace the damaged tiles. But Crestbrook does not maintain that Funsch has relied on unreliable sources in determining the cost to replace the roof. Instead, the objection seems to be that Funsch included in his damages calculation the cost of replacing the roof based on Dr. Hall's opinion

-10-

that the entire roof may need to be replaced. This does not make Funsch's calculation unreliable for purposes of Rule 702. The court therefore declines to strike Funsch's opinions and estimate on this basis.

V

The court now considers Crestbrook's motion for summary judgment. Crestbrook contends that it is entitled to summary judgment on claims for which plaintiffs will bear the burden of proof at trial. When a party moves for summary judgment on claims on which the opposing party will bear the burden of proof at trial, the moving party can obtain summary judgment by pointing the court to the absence of evidence on any essential element of the nonmovants' claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant does so, the opposing parties must go beyond their pleadings and designate specific facts demonstrating that there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict in the nonmovants' favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The opposing parties' failure to produce proof as to any essential element of a claim renders all other facts immaterial. *See TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory where the nonmovants fail to meet this burden. *Little*, 37 F.3d at 1076.

-11-

VI

The court first considers plaintiffs' breach of contract claim.

A

Crestbrook maintains that it is entitled to summary judgment on plaintiffs' breach of contract claim because their evidence is insufficient to establish that Crestbrook breached the Policy by declining to pay plaintiffs' claim. In particular, Crestbrook contends that plaintiffs cannot prove that their damage exceeded the Policy deductible.

Plaintiffs respond that they have produced evidence that the damage to the roof exceeded the Policy deductible and thus that Crestbrook breached the Policy when it declined to pay their claim.

B

In Texas, a breach of contract claim requires proof of four elements: "(1) the existence of a valid contract, (2) plaintiff's performance of duties under the contract, (3) defendant's breach of contract, and (4) damages to the plaintiff resulting from the breach." *Hoffman v. L & M Arts*, 2011 WL 3567419, at *4 n.2 (N.D. Tex. Aug. 15, 2011) (Fitzwater, C.J.) (citing *Lewis v. Bank of Am. NA*, 343 F.3d 540, 544-45 (5th Cir. 2003)); *see also Palmer v. Espey Huston & Assocs.*, 84 S.W.3d 345, 353 (Tex. App. 2002, pet. denied). The court will focus on the third element, which is one at issue: whether Crestbrook breached the Policy.

C

The crux of Crestbrook's argument is that the Policy only required it to replace the individual tiles that were damaged, not the entire roof. It therefore maintains that the cost

of repairing the damage, which excluded a total roof replacement, did not exceed the $25,000 Policy deductible. Crestbrook identifies Policy language that states that coverage is only afforded for "direct physical loss to property[.]" D. App. (ECF No. 25) at 20; D. Br. (ECF No. 24) at 9. It contends that, because its inspectors determined that the damage was localized to tiles on one slope of the roof above the garage, it could not be required to replace the undamaged roof tiles because there was no "direct physical loss" to those other tiles.

Plaintiffs respond that Dr. Hall's report and Kueng's estimate provide evidence that the entire roof must be replaced to properly repair the damage, bringing the cost of repair well above the Policy deductible.

The Policy provides that, in the event of a covered loss to the insured dwelling, Crestbrook "will pay the cost of repair or replacement[.]" D. App. (ECF No. 25) at 31. The Policy also states that the insureds agree, *inter alia*, to "repair or replace the Dwelling with materials of like kind and quality on the Residence Premises[,]" *id*. at 32, and that if they choose not to repair or replace, Crestbrook "will [] pay [] the cost to repair or rebuild the damaged Dwelling[.]" *Id*. The parties dispute whether replacement tiles that do not match the other tiles on the roof are materials of "like kind and quality." Crestbrook appears to give the phrase a purely functional reading, whereas plaintiffs give it both a functional and aesthetic reading.[3] In light of this genuine dispute about whether repairing the Property with

---

[3]Dr. Hall's report states: "[i]f matching tiles are not available, it will be necessary to replace the concrete tiles on the entire residence to ensure a proper match of material." P. Resp (ECF No. 32) at 10. Although the report does not define the extent of what Dr. Hall means by "matching," he indicates in his deposition testimony that "matching" includes

-13-

"materials of like kind and quality" requires that the roof tiles be uniform in color, the court denies Crestbrook's motion for summary judgment dismissing plaintiffs' breach of contract claim.

VII

The court next considers plaintiffs' TPPCA claims.

A

Crestbrook maintains that it is entitled to summary judgment on plaintiffs' TPPCA claims because it is not liable for their claim under the Policy and therefore it did not owe any payment under the Policy. Plaintiffs counter that, because they have produced evidence to create a genuine dispute concerning whether Crestbrook was obligated to pay the claim, there is also a genuine dispute as to whether Crestbrook wrongfully refused or delayed payment of the claim.

B

"The Texas prompt-payment statute 'provides for additional damages when an insurer wrongfully refuses or delays payment of a claim.'" *Metro. Hosp. Partners, Ltd. v. Lexington Ins. Co.*, 84 F.Supp.3d 553, 571 (S.D. Tex. 2015) (Rosenthal, J.) (quoting *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 16 (Tex. 2007)). Under Chapter 542, the insured must establish: "(1) a claim under an insurance policy; (2) for which the insurer is liable; and (3) that the insurer has not followed one or more sections of [Chapter 542] with respect to

_____

aesthetics as well as the physical interlocking of the tiles. *See* D. App. (ECF No. 25) at 178.

-14-

the claim." *Beaumont Pres. Partners, LLC v. Int'l Catastrophe Ins. Managers, LLC*, 2011 WL 6707287, at *11 (E.D. Tex. Oct. 6, 2011) (alteration in original) (quotation omitted), *rec. adopted*, 2011 WL 6709920 (E.D. Tex. Dec. 21, 2011); *see also Metro Hosp. Partners*, 84 F.Supp.3d at 571 (citing *Harris v. Am. Prot. Ins. Co.*, 158 S.W.3d 614, 623 (Tex. App. 2005, no pet.)) ("An insurer will not be held liable for violating [the prompt-payment statute] unless it is found liable for the underlying insurance claim.").

"A wrongful rejection of a claim may be considered a delay in payment for purposes of the 60-day rule and statutory damages." *Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 461 (5th Cir. 1997) (holding the insurer responsible for payment under the precursor to Chapter 542 because it was found liable for breach of contract); *see also Advanced Indicator & Mfg., Inc. v. Acadia Ins. Co.*, 50 F.4th 469, 477 (5th Cir. 2022) (per curiam) (reversing dismissal of the insured's Chapter 542 claim because the breach of contract claim was allowed to go forward). To prevail on its motion for summary judgment on plaintiffs' Chapter 542 claims, Crestbrook must "show 'that it [could] owe no TPPCA damages as a matter of law.'" *Tex. Friends Chabad-Lubavitch, Inc. v. Nova Cas. Co.*, 539 F.Supp.3d 669, 681 (S.D. Tex. 2021) (alteration in original) (quoting *Barbara Techs. Corp. v. State Farm Lloyds*, 589 S.W.3d 806, 809 (Tex. 2019)).

C

For the reasons explained above, *see supra* at § VI(C), there remains a genuine factual dispute concerning whether the covered damages to plaintiffs' dwelling exceeded the Policy deductible and thus whether Crestbrook was liable for the unpaid insurance claim. Because

-15-

plaintiffs allege that Crestbrook delayed paying their claim for longer than the amount of time provided, and because there remains a genuine dispute as to whether Crestbrook was obligated to pay the claim, Crestbrook is not entitled to summary judgment dismissing plaintiffs' claims under §§ 542.055, 542.056, 542.058 and 542.060. *See Tex. Friends Chabad-Lubavitch, Inc.*, 539 F.Supp.3d at 681 (denying summary judgment on a § 542.058 claim because the defendant did not "show[] as a matter of law that it cannot owe any additional proceeds, interest, or attorneys fees" when there was a genuine factual dispute over coverage under an insurance policy); *see also Garcia v. State Farm Lloyds*, 629 F.Supp.3d 504, 511 (N.D. Tex. 2022) (Fitzwater, J.) (holding that a claim based on §§ 542.058 and 542.060 survived summary judgment because the breach of contract claim was allowed to proceed). The court therefore denies Crestbrook's motion for summary judgment as to plaintiffs' claim under Tex. Ins. Code Ann. §§ 542.055, 542.056, 542.058, and 542.060.

VIII

Plaintiffs also asserts claims for violations of Chapter 541 of the Texas Insurance Code, the DTPA, and common law bad faith.

A

Crestbrook maintains that it is entitled to summary judgment on plaintiffs' extra-contractual claims for common law and statutory bad faith and for violations of the DTPA because it did not breach the Policy, plaintiffs allege no independent injury, and a bona fide dispute exists as to the presence of covered damage. Plaintiffs contend that they have produced sufficient evidence to create a genuine dispute as to each of these claims.

-16-

B

The court first addresses Crestbrook's position that it is entitled to summary judgment on these extra-contractual claims because it is entitled to summary judgment on plaintiffs' breach of contract claim.

Because there remains a genuine dispute as to whether Crestbrook breached the Policy contract when it refused to pay plaintiffs' claim, *see supra* at § VI(C), Crestbrook cannot obtain summary judgment based on the absence of a viable breach of contract claim.[4]

C

The court next addresses Crestbrook's bona fide dispute defense as it pertains to each applicable claim.

1

Plaintiffs allege a claim for breach of the common law duty of good faith and fair dealing. "Under Texas law, there is a duty on the part of the insurer to deal fairly and in good faith with an insured in the processing of claims." *Higginbotham*, 103 F.3d at 459 (citing *Arnold v. Nat'l Cnty. Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987)).

---

[4]Crestbrook argues that, "[a]bsent a right to policy benefits, to establish the independent tort of bad faith, an insured's damages must be distinct from the benefits it would receive under the insurance policy," and that [p]laintiff[s] do[] not allege an independent injury in [their] live pleading." P. Br. (ECF No. 24) at 15. Crestbrook is not entitled to summary judgment on this basis because the court has yet to hold that plaintiffs are not entitled to Policy benefits.

A cause of action for breach of the duty of good faith and fair dealing exists when the insurer has no reasonable basis for denying or delaying payment of a claim or when the insurer fails to determine or delays in determining whether there is any reasonable basis for denial. In order to sustain such a claim, the insured must establish the absence of a reasonable basis for denying or delaying payment of the claim and that the insurer knew, or should have known, that there was no reasonable basis for denying or delaying payment of the claim. The insured must prove that there were no facts before the insurer which, if believed, would justify denial of the claim. However, insurance carriers maintain the right to deny questionable claims without being subject to liability for an erroneous denial of the claim. A bona fide controversy is sufficient reason for failure of an insurer to make a prompt payment of a loss claim. As long as the insurer has a reasonable basis to deny or delay payment of a claim, even if that basis is eventually determined by the fact finder to be erroneous, the insurer is not liable for the tort of bad faith.

*Id.* (citations omitted) (emphasis omitted).

The focus of a bad faith inquiry is on the reasonableness of the insurer's conduct in rejecting or delaying payment of the claim, *see Universe Life Insurance Co. v. Giles*, 950 S.W.2d 48, 50 (Tex. 1997), which is determined by viewing the facts available to the insurer at the time of denial, *see Viles v. Security National Insurance Co.*, 788 S.W.2d 566, 567 (Tex. 1990). An insurer breaches the duty of good faith if it denies a claim when its liability has become reasonably clear. *State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42, 44 (Tex. 1998). Moreover, an insurer cannot escape liability by failing to investigate a claim so that it can contend that liability was never reasonably clear; it breaches the duty of good faith and fair dealing by failing reasonably to investigate a claim. *See Giles*, 950 S.W.2d at 56 n.5 (citing *Arnold*, 725 S.W.2d at 167). But an insurer's duty to investigate is limited.

-18-

*See State Farm*, 963 S.W.2d at 44. "The scope of the appropriate investigation will vary with the claim's nature and value and the complexity of the factual issues involved." *Id.* at 44-45. If, after reasonable investigation, the insurer has evidence showing that the insured's claim may be invalid, a bad faith action is not viable. *See Tucker v. State Farm Fire & Cas. Co.*, 981 F. Supp. 461, 465 (S.D. Tex. 1997) (citing *Aranda v. Ins. Co. of N. Am.*, 748 S.W.2d 210, 213 (Tex. 1988)).

2

Crestbrook contends that it is entitled to summary judgment on plaintiffs' common law bad faith claim because the summary judgment evidence shows that it reasonably investigated and adjusted the claim and that there was nothing more than a bona fide dispute between the parties as to the extent of covered damages. Plaintiffs respond that they "can readily advance evidence creating a genuine issue of material fact as to whether Defendant[] breached the duty of good faith and fair dealing." P. Resp (ECF No. 32) at 19. But plaintiffs have failed to produce sufficient evidence to create a genuine issue of material fact.

Plaintiffs point only to the fact that "Fenier acknowledged that he observed damage caused by the storm, but the amount fell below the deductible amount"; that Fenier "did not list with specificity any exclusions that apply or provide an explanation as to the lack of damage found"; and that Crestbrook did not "provide any details whatsoever as to which portions of the damage to the property its adjuster found corresponded with the conditions cited." P. Resp. (ECF No. 32) at 19. This is not sufficient evidence to create a genuine issue of fact as to whether Crestbrook's investigation was unreasonable in light of the information

available to it at the time. Plaintiffs have therefore failed to produce evidence that would enable a reasonable jury to find that there was anything more than a bona fide coverage dispute. The court therefore grants summary judgment in favor of Crestbrook on plaintiffs' claim for breach of the common law duty of good faith and fair dealing.

D

Plaintiffs also assert claims under various provisions of Chapter 541 of the Texas Insurance Code.

1

Plaintiffs allege that Crestbrook violated Chapter 541 by misrepresenting material facts relating to coverage, in violation of § 541.060(a)(1); failing to attempt in good faith to make a prompt, fair, and equitable settlement of plaintiffs' claim, although Crestbrook's liability under the Policy was reasonably clear, in violation of § 541.060(a)(2)(A); failing to provide a prompt and reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for underpayment and denial of the claim, in violation of § 541.060(a)(3); failing within a reasonable time to . . . affirm or deny coverage of a claim to a policyholder, in violation of § 541.060(a)(4); and refusing to pay plaintiffs' full claim without conducting a reasonable investigation, in violation of § 541.060(a)(7).

2

Section 541.060 lists a number of unfair settlement practices, including: "misrepresenting to a claimant a material fact or policy provision relating to coverage at issue," Tex. Ins. Code Ann. § 541.060(a)(1); "failing to attempt in good faith to effectuate

-20-

a prompt, fair, and equitable settlement of . . . a claim with respect to which the insurer's

liability has become reasonably clear," Tex. Ins. Code Ann. § 541.060(a)(2)(A); "failing to

promptly provide to a policyholder a reasonable explanation of the basis in the policy, in

relation to the facts or applicable law, for the insurer's denial of a claim or of a compromise

settlement of a claim," § 541.060(a)(3), "failing within a reasonable time to . . . affirm or

deny coverage of a claim to a policyholder," § 541.060(a)(4), and "refusing to pay a claim

without conducting a reasonable investigation with respect to the claim[.]"  Tex. Ins. Code

Ann. § 541.060(a)(7).

A "bona fide dispute" regarding insurance coverage precludes liability for breach of

the duty of good faith and fair dealing and violations of the DTPA and Texas Insurance

Code.  *See Higginbotham*, 103 F.3d at 460 (citing *Emmert v. Progressive Cnty. Mut. Ins. Co.*,

882 S.W.2d 32, 36 (Tex. App. 1994, writ denied)); *Douglas v. State Farm Lloyds*, 37

F.Supp.2d 532, 544 (S.D. Tex. 1999).   "Texas courts have clearly ruled that these

extra-contractual tort claims require the same predicate for recovery as bad faith causes of

action in Texas."  *See Higginbotham*, 103 F.3d at 460; *Nunn v. State Farm Mut. Auto. Ins.

Co.*, 729 F.Supp.2d 801, 811 (N.D. Tex. 2010) (Fitzwater, C.J.) (same).  "The insurer 'will

not be faced with a tort suit for challenging a claim of coverage if there was any reasonable

basis for denial of that coverage.'"  *Weiser-Brown Operating Co. v. St. Paul Surplus Lines

Ins. Co.*, 801 F.3d 512, 525 (5th Cir. 2015) (quoting *Henry v. Mut. of Omaha Ins. Co.*, 503

F.3d 425, 429 (5th Cir. 2007)); *see also Harrison v. Int'l Catastrophe Ins. Managers, LLC*,

2012 WL 1231071, at *8 (E.D. Tex. Mar. 22, 2012) ("When claims under the Texas

Insurance Code and the DTPA are joined with a claim for breach of the duty of good faith and fair dealing, and the statutory claims are based on the same theory which underlies the bad faith claim—namely, denial of policy benefits without a reasonable basis—then those DTPA and Insurance Code claims must fail if the bad faith claim fails." (quotation omitted)), *rec. adopted*, 2012 WL 1232020 (E.D. Tex. Apr. 12, 2012).

3

Because plaintiffs have failed to present evidence that would enable a reasonable jury to find in their favor on their claim for breach of the duty of good faith and fair dealing, *see supra* at § VIII(C)(2), their Chapter 541 claims under § 541.060(a)(2)(A) and § 541.060(a)(7) also fail. *See Hall Arts Ctr. Off., LLC v. Hanover Ins. Co.*, 327 F.Supp.3d 979, 1000 (N.D. Tex. 2018) (Fitzwater, J.) ("In this case, for the same reasons that Hall Arts's claim for breach of the duty of good faith and fair dealing fails, its § 541.060(a)(2)(A) and § 541.060(a)(7) claims fail as well."); *Kim*, 614 F.Supp.3d at 497. Accordingly, the court grants Crestbrook's motion for summary judgment as to these claims.

E

Plaintiffs' claim under Tex. Ins. Code Ann. § 541.060(a)(1) presents a closer question regarding whether the bona fide dispute rule applies, but it fails for the same reason.

For the bona fide dispute rule to apply, the extra-contractual claim must share "the same predicate for recovery as bad faith causes of action in Texas." *Higginbotham*, 103 F.3d at 460. In other words "the statutory claims [must be] 'based on the same theory which underlies the bad faith claim—namely, denial of policy benefits without a reasonable

-22-

basis[.]'" *Harrison*, 2012 WL 1231071, at *8 (internal quotation marks omitted).  Plaintiffs'

claim under § 541.060(a)(1) is purportedly for "misrepresenting to Plaintiffs material facts

relating to coverage[.]"    ECF No. 1 at 15-16.    Although this claim mentions a

misrepresentation—suggesting it may not arise out of the same factual allegations as

plaintiffs' bad faith claim—the claim still appears to rely on the same theory as their bad

faith claim (i.e., that there was no reasonable basis to deny Policy benefits and Crestbrook's

representation to the contrary was a misrepresentation of coverage).  *See Lopez v. Allstate*

*Tex. Lloyds*, 2018 WL 2773381, at *4 (N.D. Tex. May 23, 2018) (Ray, J.) ("Lopez's

supporting evidence suggests only a factual dispute over covered damage under the Policy,

not that Allstate engaged in false, deceptive, or unfair practices."), *rec. adopted*, 2018 WL

2765409 (N.D. Tex. June 8, 2018) (O'Connor, J.); *see also Mt. Javed Ventures, Ltd.*, 2020

WL 2045550, at *7 ("The Plaintiff's supporting evidence suggests only a factual dispute over

covered damage under the Policy, not that Mt. Hawley engaged in false, deceptive, or unfair

practices."); *Kim*, 614 F.Supp.3d at 497.

Accordingly, the court grants summary judgment dismissing plaintiffs'

§ 541.060(a)(1) claim.

F

Plaintiffs allege in their § 541.060(a)(3) claim that Crestbrook failed to provide a

prompt and reasonable explanation of the basis in the Policy, in relation to the facts or

applicable law, for underpayment and denial of the claim.  This claim, however, appears to

arise out of the alleged lack of a prompt and reasonable explanation of the basis for this

decision, not from the decision to deny the claim. Accordingly, the bona fide dispute rule does not entitle Crestbrook to summary judgment dismissing plaintiffs' § 541.060(a)(3) claim, and the court denies Crestbrook's motion in this respect.

Similarly, the bona fide dispute rule does not entitle Crestbrook to summary judgment on plaintiffs' § 541.060(a)(4) claim because it is not apparent that Crestbrook's reasonable basis for denying plaintiffs' claim automatically absolves it of liability regarding the promptness of making a determination. *See Hall Arts Ctr. Off., LLC*, 327 F.Supp.3d at 1000.

G

The court turns next to plaintiffs' DTPA claims. As discussed *supra* at § (VIII)(D)(2), a "bona fide dispute" regarding insurance coverage precludes liability for breach of the duty of good faith and fair dealing and violations of the DTPA and Texas Insurance Code.

Plaintiffs defend their DTPA claims in two ways. First, they maintain that, because their claim under Chapter 541 and the TPPCA should proceed, so too should their DTPA claims arising under Tex. Bus. & Com. Code Ann. § 17.46. Notably, plaintiffs provide only a "see generally" citation to this section and do not identify which of their numerous DTPA claims overlaps with any of their Chapter 541 and TPPCA claims. Plaintiffs also maintain that they have "put forward evidence of violations of other provisions" of the DTPA, again without identifying which provisions they are referencing. Plaintiffs also fail to identify evidence of alleged misrepresentations made by Crestbrook regarding the Policy.

Because plaintiffs' claims under Tex. Ins. Code Ann. §§ 541.060(a)(3) and 541.060(a)(4) are proceeding, so too will plaintiffs' claim under § 17.50(a)(4), which allows

-24-

an action for "the use or employment by any person of an act or practice in violation of Chapter 541, Insurance Code." The court therefore denies Crestbrook's motion for summary judgment on this claim.

Insofar as plaintiffs have failed to produce evidence to support their remaining DTPA claims and have not suggested that any of these other claims is not based on the same theory underlying the bad faith claim, *see Harrison*, 2012 WL 1231071, at *8, the court grants summary judgment for Crestbrook on the remaining DTPA claims. *See Guerrero v. State Farm Lloyds*, 2021 WL 5154784, at *4 (S.D. Tex. June 25, 2021) ("[T]he basis of Plaintiffs' statutory claims is the same as the basis for their breach of good faith and fair dealing claim: Defendant wrongfully denied Plaintiffs' policy benefits."); *JNH Holding, Inc. v. Nationwide Prop. & Cas. Ins. Co.*, 2017 WL 4347683, at *4 (E.D. Tex. Sept. 29, 2017) ("Because the Texas Insurance Code and DTPA claims arise out of the same factual allegations as the bad faith claims, the Court finds that these statutory claims must also be dismissed."); *see also Douglas*, 37 F.Supp.2d at 544 ("[W]hen an insured joins claims under the Texas Insurance Code and the DTPA with a bad faith claim, all asserting a wrongful denial of policy benefits, if there is no merit to the bad faith claim, there can be no liability on either of the statutory claims.").

## IX

The court now turns to plaintiffs' claims for attorney's fees. Crestbrook maintains that it is entitled to summary judgment on plaintiffs' claims for attorney's fees because it is entitled to summary judgment on plaintiffs' breach of contract claim, thereby precluding

plaintiffs from recovering on their extra-contractual claims as well.

Because the breach of contract, TPPCA, Tex. Ins. Code Ann. §§ 541.060(a)(3) and 541.060(a)(4), and Tex. Bus. & Com. Code Ann. § 17.50(a)(4) claims are proceeding, the court declines on this basis to grant summary judgment denying the attorney's fees associated with these claims. Because the court is granting summary judgment on plaintiffs' remaining DTPA claims and on plaintiffs' claims nuder Tex. Ins. Code Ann. §§ 541.060(a)(1), 541.060(a)(2)(A), and 541.060(a)(7), the court grants summary judgment on the associated attorney's fees claims for Crestbrook.

*  *  *

For the reasons explained, the court denies Crestbrook's motions to strike the opinions and testimony of plaintiffs' testifying experts Dr. Hall and Funsch. The court denies Crestbrook's motion for summary judgment with respect to plaintiffs' claims for breach of contract, violations of Tex. Ins. Code Ann. §§ 541.060(a)(3) and 541.060(a)(4), and violations of Tex. Bus. & Com. Code Ann. § 17.50(a)(4) and the associated attorney's fees claims, and it grants Crestbrook's motion with respect to plaintiffs' claims for common law breach of the duty of good faith and fair dealing, violations of Tex. Ins. Code Ann. §§ 541.060(a)(1), 541.060(a)(2)(A), and 541.060(a)(7), violations of Tex. Bus. & Com. Code

Ann. §§ 17.46(b)(2), 17.46(b)(5), 17.46(b)(7), 17.46(b)(9), 17.46(b)(12), 17.46(b)(20),

17.46(b)(24), 17.50(a)(2), and 17.50(a)(3), and the associated attorney's fees claims.

    **SO ORDERED**.

June 9, 2025.

                    _____

                    SIDNEY A. FITZWATER
                    SENIOR JUDGE